**UNITED WATER SERVICES, INC., Appellant,**

v.

**The CITY OF HOUSTON, Appellee.**

No. 01–02–01057–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 29, 2004.

Craig T. Enoch, Winstead, Sechrest & Minick, P.C., Austin, TX, Jeff Joyce, Winstead, Sechrest & Minick, P.C., Houston, TX, for Appellant.

Judy K. Hatfield, Malinda York Crouch, The City of Houston Legal Department, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this governmental immunity case, United Water Services, Inc. ("United Wa-

ter") appeals the trial court's order granting the City of Houston's ("the City") plea to the jurisdiction. Of the two issues presented by United Water in this breach of contract case, the dispositive issue that we address is whether article II, section 1 of the City's charter expressly and unambiguously waives the City's immunity from suit.

We reverse and remand.

## Background

The City contracted with United Water to operate and maintain a water purification plant. After the contract's term expired, the City claimed that United Water had breached the contract and refused to pay United Water for the services that United Water had provided under the contract. The City also submitted a claim to Continental Insurance Company ("CNA"), the surety that issued a performance bond on the contract, asserting that United Water's breach of contract had caused the City to incur damages.

United Water filed the underlying suit against the City, alleging breach of contract and seeking in excess of $900,000 in damages. United Water also sought a declaratory judgment that it did not breach the contract. The City filed a counter-claim against United Water for breach of contract and also filed a separate suit against CNA in federal court.

The City then filed a plea to the jurisdiction, asserting that it was immune from suit. In response, United Water amended its petition, alleging that the Legislature waived the City's immunity by enacting Local Government Code section 51.075, which states with regard to home-rule cities, "The municipality may plead and be

impleaded in any court."[1] United Water further asserted that the language in the City's charter, which states that the City "may sue and be sued ... implead and be impleaded in all courts and places and in all matters whatever ....,"[2] also waived the City's immunity from suit. Additionally, United Water asserted that the City waived immunity from suit by filing its counter-claim in the instant suit and by filing suit against CNA in federal court. Alternatively, United Water argued that the City waived suit by accepting the benefits of the contract.

The trial court granted the City's plea to the jurisdiction and dismissed United Water's claims for want of subject matter jurisdiction.[3] United Water appeals the trial court's order.

## Standard and Scope of Review

■ Subject-matter jurisdiction is essential for a court to have the authority to resolve a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The plaintiff has the burden to plead facts affirmatively showing that the trial court has subject-matter jurisdiction. *Id.* at 446. A party may challenge a court's subject-matter jurisdiction by filing a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999). As a question of law, we review the trial court's ruling on such a plea de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In conducting this de novo review, we do not look at the merits of the plaintiff's case but consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80

---

1. TEX. LOC. GOV'T CODE ANN. § 51.075 (Vernon 1999).

2. CITY OF HOUSTON CHARTER, art. II, § 1 (Act of 1905).

3. The trial court's order also recognized that the City had non-suited its counter-claim against United Water, making the order final and appealable.

S.W.3d 549, 555 (Tex.2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dept. of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002).

## General Principles of Sovereign Immunity[4]

Sovereign immunity protects the State, its agencies and officials, and political subdivisions of the State from suit, unless immunity from suit has been waived. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 594 (Tex. 2001). The sovereign immunity of the State inures to the benefit of a municipality insofar as the municipality engages in the exercise of governmental functions, except when that immunity has been waived.[5] *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000); *City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex.1997); *see also City of Houston v. Rushing,* 39 S.W.3d 685, 686 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (stating, "The City of Houston, as a home-rule municipality, is generally immune from both suit and liability in its governmental functions.").

Governmental immunity encompasses two principles: (1) immunity from suit (barring a lawsuit unless the Legislature expressly gives its consent to suit), and (2) immunity from liability (protection from judgments even if the Legislature has expressly given its consent to the suit). *Travis County v. Pelzel & As-*socs., *Inc.,* 77 S.W.3d 246, 248 (Tex.2002). By entering into a contract, a governmental entity waives immunity from liability for breaching that contract but does not waive immunity from suit by entering into a contract. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003); *Little–Tex Insulation,* 39 S.W.3d at 594; *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex.App.-Austin 1991, writ denied).

A plaintiff has the burden to establish a waiver of immunity from suit. *Jones,* 8 S.W.3d at 638. Immunity from suit can be waived only by legislative consent or constitutional amendment. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 695 (Tex.2003). The Texas Supreme Court has repeatedly reaffirmed that such waiver must be expressed by clear and unambiguous language. *Taylor,* 106 S.W.3d at 696; *Pelzel,* 77 S.W.3d at 248; *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 854 (Tex.2002); *City of La Porte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980); *see also* Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2004) (providing, "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

---

**4.** The terms sovereign immunity and governmental immunity are often used synonymously and interchangeably without distinction. However, the supreme court has noted that sovereign immunity refers to the State's immunity from suit and liability and protects the State and its divisions, while governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Because the governmental entity involved here is a municipality, we use the term governmental immunity in this opinion. But, if the authority cited in this opinion uses "sovereign immunity," we shall also employ that terminology.

**5.** Conversely, a municipality has no "sovereign immunity" when it engages in the exercise of proprietary functions. *City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex.1997). The parties do not dispute that the City engaged in a governmental function with regard to the activities involved in this case.

## Clear and Unambiguous
## Waiver Language

In its first issue, United Water contends that the City's immunity from suit is waived by the clear and unambiguous language of Local Government Code section 51.075, which states, "The municipality may plead and be impleaded in any court,"[6] and article II, section 1 of the City's charter, which provides that the City "may sue and be sued ... in all courts and places and in all matters whatever...."[7] In conducting our de novo review of this issue, we must first determine whether the language of either the City's charter or Local Government Code section 51.075 clearly and unambiguously waives the City's immunity to suit.

### A. "Sue and be Sued" Provisions: *Missouri Pacific* Remains the Law

■ With regard to the "sue and be sued" language found in the City's charter, such determination has already been made by our supreme court in *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, 453 S.W.2d 812, 813 (Tex.1970). The *Missouri Pacific* court held that a statute which provides that a certain state entity can "sue and be sued" meets the legislative permission requirement that waives immunity from suit. *Id.* We are bound by such precedent.

The *Missouri Pacific* case arose when a brakeman for Missouri Pacific Railroad died after being knocked from a train ladder by a crane that had been left too close to the track. *Id.* at 812–13. The brakeman's beneficiaries sued Missouri Pacific, which filed a cross-action for indemnity against the Brownsville Navigation District. *Id.* The cross-action was based on a contract between Missouri Pacific and the navigation district that prohibited the dis-

trict from allowing certain objects to be placed near the track. *Id.* The trial court granted the district's plea to the jurisdiction on the basis that the district was a subdivision of the State and that consent to suit had not been given. *Id.* at 813. The court of civil appeals affirmed. *Id.*

In its opinion, the supreme court noted in *Missouri Pacific* that the navigation district was governed by a provision of a 1925 act that provided as follows: "All navigation districts established under this Act may, by and through the navigation and canal commissioners, *sue and be sued in all courts* of this State in the name of such navigation district." *Id.* at 812–13 (emphasis added). At issue was whether the phrase "sue and be sued" was a waiver of the district's immunity from suit. Reversing the court of appeals, the *Missouri Pacific* court concluded, "In our opinion [the navigation district statute] is *quite plain and gives general consent for District to be sued in the courts of Texas* in the same manner as other defendants." *Id.* (emphasis added). By its holding, the *Missouri Pacific* court rejected the district's argument that other statutes more clearly expressed the legislature's consent to suit. *Id.*

Recognizing *Missouri Pacific* as binding precedent, other appellate courts have found that similar "sue and be sued" provisions supply the requisite consent to sue the subject governmental entity. *See, e.g., Alamo Cmty. Coll. Dist. v. Browning Const. Co.*, No. 04-02-0808, 2004 WL 60975, at *4 (Tex.App.-San Antonio Jan.14, 2004, pet. filed) (holding that "sue and be sued" language in Education Code subsection 11.151(a) waives immunity to suit); *Goerlitz v. City of Midland*, 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed) (concluding that city charter provision that permitted city to "sue and

---

6. TEX. LOC. GOV'T CODE ANN. § 51.075 (Vernon 1999).

7. CITY OF HOUSTON CHARTER, art. II, § 1 (Act of 1905).

be sued" waived immunity from suit); *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 449 (Tex.App.-Fort Worth 2001, no pet.) (holding Health Code subsection 281.056(a) "sue and be sued" language waived immunity from suit); *Bates v. Tex. State Technical Coll.*, 983 S.W.2d 821, 827 (Tex.App.-Waco 1998, pet. denied) (holding that Education Code section 135.55 which states that "board may sue, and be sued," grants consent to sue Texas State Technical College System); *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 348 (Tex.App.-Corpus Christi 1997) (concluding that"sue and be sued" language in Water Code section 58.098 "provided clear and unambiguous consent for the Irrigation District to be sued"), *pet. denied per curiam*, 989 S.W.2d 360 (Tex.1998); *Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 122–23 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding Water Code provision stating that water district could sue and be sued waived immunity from suit); *Knowles v. City of Granbury*, 953 S.W.2d 19, 23 (Tex.App.-Fort Worth 1997, pet. denied) ("As a home-rule municipality, Granbury may sue and be sued. Had it wanted to exempt itself from liability, it could have.... Because the Local Government Code and Granbury's charter provide that the city may be sued, its immunity from suit is [ ] waived."); *Dillard*, 806 S.W.2d at 594 (recognizing Education Code section providing that school district trustees may sue and be sued waived immunity from suit).

We also recognize that several appellate courts have failed to follow *Missouri Pacific* and have held that "sue and be sued" provisions do not waive the governmental entity's immunity from suit. *See, e.g., City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 398 (Tex.App.-Dallas 2002), *rev'd on other grounds*, No. 02–1031, —— S.W.3d ——, 2004 WL 726906 (Tex. April 2, 2004); *Jackson v. City of Galveston*, 837 S.W.2d 868, 871 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Townsend v. Mem. Med. Ctr.*, 529 S.W.2d 264, 267 (Tex. Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.); *Childs v. Greenville Hosp. Auth.*, 479 S.W.2d 399, 401 (Tex.Civ.App.-Texarkana 1972, writ ref'd n.r.e.).

The City relies on the Dallas Court of Appeals' holding in *Reata* to support its position that the "sue and be sued" language at issue does not waive its immunity to suit; rather, the City argues that such language relates to the City's capacity to sue or be sued once immunity has been waived.[8] *Reata*, 83 S.W.3d at 398 (holding "sue and be sued" language ·"simply speak[s] to the City's capacity to sue when immunity *has* been waived.").[9]

We note that *Reata* fails to distinguish, or even to mention, *Missouri Pacific's* holding that "sue and be sued" language *plainly* waives immunity. Instead, *Reata* cited *Jackson* as the authority supporting its holding. *Id.* (citing *Jackson*, 837 S.W.2d at 871). Significantly, the Fourteenth Court of Appeals recently declined

---

**8.** In a per curiam opinion, the Texas Supreme Court recently reversed the appellate court's decision in *Reata* on the basis that the City of Dallas waived its immunity from suit by intervening into the underlying lawsuit and seeking damages. *Reata Constr. Corp v. City of Dallas*, —— S.W.3d ——, ——, 2004 WL 726906, * 3, No. 02–1031 (Tex. April 2, 2004). The supreme court did not reach the issue of whether the "sue and be sued" provision at issue in *Reata* waived the City of Dallas's immunity from suit. Despite the reversal in

*Reata*, we include a discussion of the appellate court's decision regarding the waiver effect of the "sue and be sued" language be- · cause the supreme court did not address that issue and because the City in this case relies heavily on *Reata* in support of its position.

**9.** We note that the trial court in the instant case stated in its "Final Order of Dismissal" that it was "of the opinion" that the City's plea to the jurisdiction should be granted based on *Reata*.

to follow its earlier holding in *Jackson* in determining whether the "plead and be impleaded" language found in Local Government Code section 51.075 waives the City of Houston's immunity from suit. *City of Houston v. Clear Channel Outdoor, Inc.,* No. 14–03–00022, 2004 WL 63561 at * 4 (Tex.App.-Houston [14th Dist.] Jan. 15, 2004, no pet. h.). Instead, the *Clear Channel* court chose to following the supreme court's holding in *Missouri Pacific,* which it noted "remains good law," and "the majority of intermediate appellate courts" that have held "sue and be sued" language provides legislative consent for suit. *Id.*

In analyzing *Reata,* we also note that the *Jackson* court's holding that a "sue and be sued" provision did not "impliedly" waive a city's immunity was based, without analysis, on *Townsend* and *Childs.* *Jackson,* 837 S.W.2d at 871 (citing *Townsend,* 529 S.W.2d at 267 and *Childs,* 479 S.W.2d at 401). The *Townsend* court relied solely on *Childs,* which in turn relied exclusively on pre-*Missouri Pacific* cases to support its holding that a "sue and be sued" provision did not waive a hospital district's immunity from suit. *Townsend,* 529 S.W.2d at 267; *Childs,* 479 S.W.2d at 401. For these reasons, we decline to follow *Reata.*

The Dallas Court of Appeals revisited the issue of whether "sue and be sued" language waives immunity from suit in *Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. District,* 123 S.W.3d 63 (Tex.App.-Dallas 2003, pet. filed.). Relying on *Reata,* the *Satterfield* court held that the "sue and be sued" language found in section 11.151 of the Education Code "merely 'speak[s] to the City's . . . capacity to be sued when immunity *has* been waived.' " *Id.* at 66 (quoting *Reata,* 83 S.W.3d at 398). The *Satterfield* court also noted, "At least one commentator has suggested that because 'sue and be sued' lan-

guage originated in the corporate law context, these provisions can easily be read as a designation to give a particular entity a legal existence in the courts." *Id.* (citing George C. Kraehe, *"There's Something About Cities": Understanding Proprietary Functions of Texas Municipalities and Governmental Immunity,* 32 Tex. Tech. L.Rev. 1, 35–36 (2000)); *see also* A. Craig Carter, *Is Sue and Be Sued Language a Clear and Unambiguous Waiver of Immunity?,* 35 St. Mary's L.J. 275, 289–300 (2004) (asserting that "sue and be sued" language refers to an entity's capacity to be sued).

Unlike *Reata,* the *Satterfield* court directly addressed the holding in *Missouri Pacific,* stating that "the supreme court has since departed from the logic of *Missouri Pacific* in the three decades following that decision." *Satterfield,* 123 S.W.3d at 67. The *Satterfield* court posited that the supreme court's holdings in *Pelzel* and *Taylor* abrogated its holding in *Missouri Pacific.* *See id.* (citing *Pelzel,* 77 S.W.3d 246, 249 (Tex.2002) and *Taylor,* 106 S.W.3d at 700). In this regard, the *Satterfield* court reasoned as follows:

> Both *Pelzel* and *Taylor* listed several examples of clear and unambiguous expressions of the Legislature's intent to waive immunity from suit. Notably, neither of these supreme court cases presented a "sue and be sued" statute as an example of a clear and unambiguous waiver of immunity of suit.

*Satterfield,* 123 S.W.3d at 67 (internal citations omitted).

We disagree with the *Satterfield* court's reasoning that the supreme court's lack of citation to "sue and be sued" statutes as an example of a clear and unambiguous waiver of immunity of suit in *Pelzel* and *Taylor* serves to implicitly overrule *Missouri Pacific.*[10] To the contrary, the supreme

**10.** The City also adopts this position, arguing

that *Missouri Pacific* has been impliedly over-

court in *Pelzel* discussed *Missouri Pacific*, noting that the statute at issue, Local Government Code section 89.004, was distinguishable from the one in *Missouri Pacific* because it did not contain "sue and be sued" language. *Pelzel*, 77 S.W.3d at 249–50. In this regard, the supreme court in *Pelzel* observed that the predecessor statute to section 89.004 had contained "sue and be sued language," which was deleted in 1879. *Id.* Implicitly referring to *Missouri Pacific*, the court stated, "Thus well over a hundred years ago, the Legislature deleted the only language arguably waiving sovereign immunity, suggesting that it intended to preserve counties' immunity from suit." *Id.* at 250.

The *Pelzel* court then engaged in the following detailed discussion of *Missouri Pacific*:

> In *Missouri Pacific*, we held that a statute applicable to navigation districts "is quite plain and gives general consent for District to be sued in the courts of Texas." The statute stated that navigation districts "may, by and through the navigation and canal commissioners, sue and be sued in all courts of this State in the name of such navigation district, and all courts of this State shall take judicial notice of the establishment of all districts." In response to the district's argument that other statutes had more clearly expressed consent to suit, we noted that 'suits against counties have been held to be authorized by statutes that simply require the filing of a claim before institution of suit.' But *Missouri Pacific* involved a different statute than the one in this case and that statute, unlike the current version of the statute

here, contained "sue and be sued" language.[11]

*Id.* at 251 (citations omitted). Thus, rather than overruling its prior holding in *Missouri Pacific*, the supreme court in *Pelzel* distinguished the "sue and be sued" language found by the *Missouri Pacific* court to "quite plain[ly]" waive immunity from suit from the ambiguous expression of legislative waiver of immunity found in Local Government Code section 89.004. *Id.* at 250.

We acknowledge that the *Satterfield* court correctly recognized that *Taylor* does not reference *Missouri Pacific*. Although we do not interpret that omission to be indicative that *Missouri Pacific* is no longer binding authority, we do recognize that *Taylor* cannot be ignored. At issue in *Taylor* was whether the Legislature waived a state hospital's consent to suit by enacting the patient's bill of rights statute, which provides that a person who is harmed by a mental health facility's violation of the patient's bill of rights may sue for injunctive relief, damages, or both. *See Taylor*, 106 S.W.3d at 698–99. The *Taylor* court stated that "we have little difficulty recognizing the Legislature's intent to waive immunity from suit *when a statute provides that a state entity may be sued* or that 'sovereign immunity to suit is waived.'" *Id.* at 696–97 (emphasis added). The court then noted that the patient's bill of rights statute did not contain such explicit language. *Id.* at 697.

In the absence of explicit waiver language, the *Taylor* court outlined the following factors for a court to consider in determining whether a statute waives im-

---

ruled.

**11.** The *Pelzel* court then noted that it had found no cases to support the dicta in *Missouri Pacific* that other statutes, such as "those that simply require the filing of a claim

before institution of suit," showed a less clear consent to suit than inclusion of "sue and be sued" language. *Pelzel*, 77 S.W.3d at 251 (referring to *Mo. Pac. R.R.*, 453 S.W.2d at 813).

munity: (1) the statute in question must waive immunity "beyond doubt"; (2) ambiguities are generally resolved in favor of immunity; (3) if the Legislature requires the joinder of a governmental entity in a suit for which immunity would otherwise attach, the Legislature has waived immunity; and (4) if the Legislature simultaneously enacts legislation limiting the governmental unit's potential liability, a waiver of immunity may be found. *Id.* at 697–98.

As mentioned throughout this opinion, the supreme court held in *Missouri Pacific* that "sue and be sued" language "quite plain[ly]" waives immunity from suit and "gives general consent" for the governmental entity to be sued. *Missouri Pacific*, 453 S.W.2d at 813–14. Therefore, we need not, and should not, apply the *Taylor* factors to the City charter provision at issue in this case because, as determined by the supreme court in *Missouri Pacific*, the provision contains explicit waiver language.

■ While we acknowledge that the area of waiver of governmental immunity is an evolving one, we cannot agree with the *Satterfield* court that *Missouri Pacific* has been overruled. *See Satterfield*, 123 S.W.3d at 70 (Lang, J., dissenting) (criticizing majority opinion for improperly concluding that *Missouri Pacific* has been effectively overruled). As an intermediate court of appeals, we must follow our supreme court's expressions of the law and leave changes in the application of common-law rules to that higher authority. *See Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of a court of appeals to abrogate or modify established precedent. That function lies solely with [the Supreme] Court."); *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989) ("This court need not defend its opinions from criticism from courts of appeals; rather they must follow this court's pronouncements."). Because *Missouri Pacific* remains the law of this state, we are bound to follow its holding that "sue and be sued" language waives immunity from suit. *See Clear Channel Outdoor*, No. 14–03–00022, 2004 WL 63561 at * 1–*2 (recognizing that *Missouri Pacific* remains good law and applying its holding); *Webb v. City of Dallas*, 314 F.3d 787, 795–96 (5th Cir.2002) (refusing to certify to Texas Supreme Court question of whether "sue and be sued" language waived City of Dallas's immunity from suit because controlling authority from supreme court, i.e., *Missouri Pacific*, already addressed issue).

**B. *Ambiguity of Waiver Language Found in City Charter Article II, Section 1***

■ The City also contends that the "sue and be sued" language found in its charter is distinguishable from the "sue and be sued" language found in *Missouri Pacific* and from other "sue and be sued" provisions that have been held to waive immunity from suit. The City argues that, when read within the context of the entirety of article II, section 1, the charter's "sue and be sued" language no longer provides a clear and unambiguous waiver of immunity from suit. Specifically, the City relies on language appearing at the end of article II, section 1, which provides that the City "shall enjoy all rights, immunities, powers, privileges, and franchises now possessed and enjoyed by said City and herein granted and conferred."[12] CITY OF HOUSTON

---

12. Read in its entirety, article II, section 1 provides as follows:

**Section 1. Corporate Powers**

The City of Houston, made a body politic and corporate by this Act, shall have perpetual succession, may sue and be sued, may contract and be contracted with, implead and be impleaded in all courts and places and in all matters whatever, may take, hold and purchase lands as may be needed for the corporate purposes of said City, and may sell any real estate, or per-

CHARTER, art. II, § 1 (Act of 1905). The City asserts that such language serves to abrogate the waiver effect of the "sue and be sued" language found at the beginning of article II, section 1. The City contends that, because the charter appears to waive immunity from suit while simultaneously retaining all immunities "now possessed," an ambiguity exists whether immunity from suit is expressly waived. To determine the validity of the City's contention, the relevant inquiry becomes whether the City "possessed" immunity from suit when article II, section 1 was enacted in 1905. Stated differently, if the City did not possess immunity from suit in 1905 when the current charter provision was enacted, then the "sue and be sued" language found in the charter operates as a clear and express waiver of the City's immunity from suit under the holding of *Missouri Pacific*. To make this determination, a historical analysis of the charter is useful.

As noted by one scholar, "[f]rom 1836 to 1912 the major cities in Texas were created by a special act of the Texas congress or legislature." 22 DAVID B. BROOKS, TEXAS PRACTICE: MUNICIPAL LAW AND PRACTICE § 1.16 (2d ed.1999). Incorporated in 1836,

Houston was no exception. *See* Act approved June 5, 1837, 1st Cong., R.S., § 10, 1836–1837 Repub. Tex. Laws 238, 239, *reprinted in* 1 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1298, 1299 (Austin, Gammel Book Co. 1898). During this same period, the state Legislature frequently amended and replaced the special charters granted to Texas cities. 22 DAVID B. BROOKS, TEXAS PRACTICE: MUNICIPAL LAW AND PRACTICE § 1.16.

In 1839, the Third Congress of the Republic of Texas granted the City a charter, which provided that the City was "capable of suing and being sued, and defending in all courts and in all actions and matters whatsoever." Act approved Jan. 28, 1839, 3rd Cong., R.S., § 1, 1839 Repub. Tex. Laws 94, 94, *reprinted in* 2 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 94, 94 (Austin, Gammel Book Co. 1898). The Texas Legislature retained similar "sue and be sued" provisions in the charters it granted the City in 1866, 1870, 1874, 1893, 1903, and 1905.[13]

In 1912, the "home-rule amendment" of the Texas Constitution was passed, which authorized cities with more than five thousand inhabitants to adopt a home-rule

---

sonal property owned by it, perform and render all public services, and when deemed expedient, may condemn property for public use, and may hold, manage, and control the same, such condemnation proceedings to be governed and controlled by the law in force in reference to the condemnation of the right of way of railroad companies and the assessment of damages therefor, and shall be subject to all the duties and obligations now pertaining to or incumbent upon said City as a corporation not in conflict with the provisions of this act, and shall enjoy all rights, immunities, powers, privileges, and franchises now possessed and enjoyed by said City and herein granted and conferred.

CITY OF HOUSTON CHARTER, art. II, § 1.

13. *See* Act of Oct. 22, 1866, 11th Leg., R.S., ch. XCIX, § 1, 1866 Tex. Spec. Laws 167, 167

*reprinted in* 5 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1387, 1387 (Austin, Gammel Book Co. 1898); Act of Aug. 2, 1870, 12th Leg., C.S., ch. XXXVIII, § 1, 1870 Tex. Spec. Laws 68, 68, *reprinted in* 6 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 570, 570 (Austin, Gammel Book Co. 1898); Act of Jan. 23, 1874, 14th Leg., R. S., ch. III, § 1, 1874 Tex. Spec. Laws 4, 4, *reprinted in* 8 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 270, 270 (Austin, Gammel Book Co. 1898); Act effective Aug. 7, 1893, 23rd Leg., R.S., ch. 5, § 1, 1893 Tex. Spec. Laws 15, 15, *reprinted in* 10 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 675, 675; Act of Apr. 21, 1903, 28th Leg., R.S., ch. XX, art. II, § 1, 1903 Tex. Spec. Laws 97, 98; Act of Mar. 18, 1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Spec. Laws 131, 131.

charter. *See* TEX. CONST. art. XI, § 5. The home-rule amendment "altered the long-standing practice of having special charters individually granted and amended by the legislature" for the State's larger cities. 22 DAVID B. BROOKS, TEXAS PRACTICE: MUNICIPAL LAW AND PRACTICE § 1.17.

The City's charter reflects that many of its provisions, including article II, section 1, originated in the 1905 charter granted by the Legislature. *See* CITY OF HOUSTON CHARTER, art. II, § 1. These provisions were later adopted by the City pursuant to its home-rule status. TEX. CONST. art. XI, § 5. Thus, the language that we find in article II, section 1 of the charter today is identical to the language contained in article II, section 1 of the charter granted to the City by the Legislature in 1905. *Compare* CITY OF HOUSTON CHARTER, art. II, § 1 *with* Act of March 18, 1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Spec. Laws 131, 131.

Because it was the last charter granted by the Legislature to the City prior to 1905, the 1903 charter is of particular relevance to our analysis in determining whether the City "possessed" immunity from suit when the Legislature granted the 1905 charter. Importantly, article II, section 1 of the 1903 charter expressly waived the City's immunity from suit and read as follows:

> The City of Houston, made a body politic and corporate by this Act, shall have perpetual succession, may use a common seal, *sue and be sued,* and for any purpose which it deems necessary or expedient for the public interest, perform and render all public services and acquire property within or without the city limits by purchase, gift, device or by condemnation proceedings, and hold, manage and control the same, such condemnation proceedings to be governed and controlled by the law now in force in reference to the condemnation of the right of way of railroad companies and the assessment of damages therefor.

Act of April 21, 1903, 28th Leg., R.S., ch. XX, art. II, § 1, 1903 Tex. Spec. Laws 97, 98. (emphasis added).

That the City "shall enjoy all rights, immunities, powers, privileges, and franchises now possessed" was added by the Legislature to article II, section 1 for first the time in 1905. Because the Legislature had expressly waived the City's immunity from suit in 1903, the City did not "possess" such immunity when the charter, including article II, section 1, was amended in 1905. Accordingly, we hold that the "sue and be sued" language found in article II, section 1 of the charter is a clear and unambiguous waiver of the City's immunity from suit.

## C. *The City's Authority to Waive Immunity from Suit*

Lastly, we address the City's contention that the charter cannot serve to waive its immunity from suit because only the Legislature, not the City, can waive immunity from suit. As discussed in the preceding section, *it was the Legislature* who originally waived the City's immunity from suit when it enacted article II, section 1 as part of the 1905 special act granting the City a new charter. Act of March 18, 1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Spec. Laws 131, 131. After obtaining home-rule status, the City adopted that provision. *See* CITY OF HOUSTON CHARTER, art. II, § 1. Since its adoption, article II, section 1 has not been amended or repealed by the City. *See id.* Thus, because it was, indeed, the Legislature who originally waived the City's immunity from suit, we need not address the issue of whether the City, itself, can waive immunity from suit.

Because we have held that the "sue and be sued" language found in its charter

waives the City's immunity from suit, we need not address whether Local Government Code section 51.075, which provides that home-rule municipalities may "plead and be impleaded," also waives the City's immunity from suit.[14] *See* Tex.R.App. P. 47.1 (stating court of appeals must hand down an opinion that addresses every issue raised and necessary to final disposition of appeal).

We sustain United Water's first issue to the extent that it contends that the City's charter waives the City's immunity from suit.[15]

### Conclusion

We reverse the order of the trial court dismissing United Water's claims against the City and remand the cause to the trial court.

14. We recognize that disagreement exists between at least two intermediate appellate courts whether the "plead and be impleaded" language found in Local Government Code section 51.075 is synonymous with the "sue and be sued" language found by the *Missouri Pacific* court to waive immunity from suit. *Compare City of Mexia v. Tooke*, 115 S.W.3d 618, 622–23 (Tex.App.-Waco 2003, pet. granted) (holding that, based on settled principle of statutory construction that Legislature used every word for a particular purpose," phrase "plead and be impleaded" found in section 51.075 does not have same meaning as phrase "sue and be sued" found in other statutes) *with City of Houston v. Clear Channel Outdoor, Inc.*, No. 14–03–00022. 2004 WL 63561 at * 4 (Tex.App.-Houston [14th Dist.] Jan. 15,

2004, no pet. h.) (finding no difference in meaning between "sue and be sued" and "plead and be impleaded" provisions). Because we have concluded that the City's immunity from suit is waived by the "sue and be sued" language found in its charter, we need not address whether the provisions are synonymous.

15. In its second issue, United Water contends that the City waived its immunity from suit by filing a counter-claim in this suit and by filing suit against CNA in federal court. Resolution of this issue is not necessary given our disposition of United Water's first issue; therefore, we do not address United Water's second issue. *See* Tex.R.App. P. 47.1.