**CITY OF ROMAN FOREST, Appellant,**

v.

**Gary Michael STOCKMAN, Appellee.**

No. 09–03–408 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 25, 2004.

Decided July 29, 2004.

William S. Helfand, Kevin D. Jewell, Barbara E. Roberts, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, for appellant.

Joyce Keating, Houston, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004). Gary Michael Stockman sued the City of Roman Forest for wrongful termination under the

Whistleblower Act, for breach of contract, and for intentional infliction of emotional distress. The City says the trial court lacks jurisdiction because the City is immune from suit.

The case arises out of Stockman's work for the City while he was a municipal court judge. A municipal court judge's term of office is two years. *See* TEX. GOV'T CODE ANN. § 29.005 (Vernon 2004). Stockman was appointed municipal judge of Roman Forest and served in that capacity from 2001 until 2003.[1] Stockman claims the mayor requested that Stockman dismiss certain traffic tickets; Stockman refused to do so and reported the incidents to the chief of police. As a result of his refusal to dismiss the tickets, Stockman claims his pay was docked. He also alleges he conducted an audit of the court system at the prior mayor's request and found irregularities, but when he pursued the corruption investigation he was threatened by a council member and told to stop. Stockman claims the City terminated him as a result of his reports of illegal activity. The City says his term ended, and he was not reappointed.

■ Stockman sued the City and the individuals involved.[2] A governmental unit is immune from suit unless the immunity is waived. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). Immunity from suit may be waived by statute. *See generally Travis*

*County v. Pelzel & Assocs.*, 77 S.W.3d 246, 249 (Tex.2002).

■ The law of governmental immunity has traditionally distinguished between a municipality's governmental and proprietary functions. *See City of Galveston v. Posnainsky*, 62 Tex. 118 (1884); *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex.1986). Generally, unless the immunity is waived, a municipality is immune from suit for the exercise of a governmental function. *See City of Mission v. Cantu*, 89 S.W.3d 795, 801 (Tex.App.-Corpus Christi 2002, no pet.) (tort); *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 730 (Tex.App.-Corpus Christi 1994, writ denied) (tort); *International Bank of Commerce v. Union Nat'l Bank*, 653 S.W.2d 539, 545–46 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.) (contract).

This suit arises out of the City's performance of a governmental function. Stockman asserts three types of claims—a tort claim, a contract claim, and a Whistleblower claim. He cites three statutory waivers of governmental immunity. In the Tort Claims Act, the Legislature has provided a limited waiver of immunity from suit for certain tort actions. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.0215 (Vernon 1997 & Supp.2004). The Whistleblower Act also contains a partial waiver of immunity from suit to the extent claims are allowed under that Act. And the Local Government Code provides general law municipalities may "sue and be sued"—language that some courts have found to be a waiver of immunity from suit. *See* TEX. LOC. GOV'T CODE ANN. §§ 51.013, 51.033, 51.051 (Vernon 1999).

---

1. By affidavit, Stockman says he was appointed municipal court judge in November 2000 and became the "presiding municipal judge" in January 2001. We understand this to mean his term began in 2001.

2. Stockman sued the mayor and two members of the governing council, but they are not before us in this interlocutory appeal.

In issue one, the City contends the trial court erred in denying its plea to the jurisdiction on Stockman's Whistleblower Act claim. Under the Act, a "state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a) (Vernon Supp.2004). The statute defines "public employee" as "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity." TEX. GOV'T CODE ANN. § 554.001(4) (Vernon Supp.2004). Immunity is waived to the extent of liability allowed by the Whistleblower Act. See TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp.2004). Therefore, unless the party asserting the claim under the Whistleblower Act is a public employee within the meaning of the Act, immunity from suit is not waived by the Act.

Stockman argues he falls under the "appointed officer other than an independent contractor" part of the "public employee" definition. He was appointed; and because members of the City's governing body attempted to control the details of his work as municipal judge, Stockman says he was not an independent contractor.

The common law test for determining whether someone is an employee rather than an independent contractor is whether the alleged employer has the right to control the progress, details, and methods of operation of the work. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex.2002). Stockman relies on the City's control of the hours he worked and the provision of his supplies, his office, and support personnel to establish he was not an independent contractor. But that arrangement does not show any right to control the details of his work as a municipal judge, nor does any individual's alleged effort to control him demonstrate the City's right to control his judicial work. The evidence before the trial court does not indicate he was an employee rather than an independent contractor. *See generally Miranda*, 133 S.W.3d at 228 (If the evidence is undisputed or does not create a fact question regarding the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law.). Stockman argues that the City's right to terminate him or not reappoint him makes him dependent.[3] But the Act's definition of "public employee" excludes appointed officials who are independent contractors. *See* TEX. GOV'T CODE ANN. § 554.001(3) (Vernon Supp.2004). The general power to appoint or not reappoint Stockman does not in itself show control of the details of the judge's work sufficient to make him a "public employee" within the meaning of the Act.

The Texas Constitution provides, as follows, for a separation of powers among the three branches of state government:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any

3. The parties dispute whether Stockman completed his two year term and was not reap-
pointed or whether he was terminated.

power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. The Texas Constitution also provides that the "judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law." TEX. CONST. art. V, § 1. The municipal court derives its power and jurisdiction from the Texas Government Code; pursuant to constitutional authority, the Legislature has created a municipal court in each municipality and defined the court's jurisdiction. *See* TEX. GOV'T CODE ANN. §§ 29.002, 29.003 (Vernon 2004). A municipal court judge is part of the judicial branch of government. *See generally Thompson v. City of Austin,* 979 S.W.2d 676, 680–83 (Tex.App.-Austin 1998, no pet.).

In *Thompson,* the court noted that a municipal judge was entrusted with independent and sovereign powers, and his office had all the indicia of a public office, including judicial oath, membership in the judiciary, authority to pronounce judgment and to adjudicate parties' rights, and a fixed term subject to removal. *Thompson,* 979 S.W.2d at 682–83. In view of these facts, the court held a municipal judge was

not an "employee" within the meaning of that term in the Texas Commission on Human Rights Act. As the *Thompson* court stated, "Historically, the judiciary has been privileged with a sacred independence necessary to maintain the impartiality required to determine the law. A judge must be independent from the outside influence of the other branches of government. Thus, the very nature of the office demands that a municipal judge be independent of the Council in exercising this sovereign power." *Id.* at 682.

We hold a municipal judge is not within the definition of "public employee" in the Whistleblower Act. Issue one is sustained.

■ In issue two, the City argues that Stockman's breach of contract claim is barred by the doctrine of governmental immunity.[4] Stockman alleged in his pleadings that the City breached its agreement to pay him wages for services he had rendered to the City in an audit of the City's warrant and complaint system. This assignment was separate from his work as a municipal judge. In its plea to the jurisdiction, the City denied the existence of a contract, and, alternatively, that any contract would be unenforceable under the Statute of Frauds. The City does not make this argument on appeal, and we do not consider it. Instead, the City argues on appeal that governmental immunity bars the contract claim.[5]

4. The terms "governmental immunity" and "sovereign immunity" are often used synonymously and interchangeably without distinction. However, the Supreme Court has noted that sovereign immunity refers to the State's immunity from suit and liability and protects the State and its divisions, while governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Because the governmental entity involved here is a municipality, we use the term governmental immunity in this opinion. But, if

the authority cited in this opinion uses "sovereign immunity," we shall also employ that terminology.

5. Although the City did not raise governmental immunity as to Stockman's contract claim at the trial court level, waiver of immunity from suit is jurisdictional in nature and may be raised for the first time on appeal. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444–45 (Tex.1993) (subject matter jurisdiction cannot be waived and may be raised for the

■ Governmental immunity inures to the benefit of a municipality when it engages in the exercise of governmental functions. *City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex.1997); *City of Mexia v. Tooke,* 115 S.W.3d 618, 624 (Tex.App.-Waco 2003, pet. granted) (applying the "governmental-proprietary dichotomy" to contract claims). A municipality's exercise of proprietary functions, however, does not fall under the protection of governmental immunity. *Herschbach,* 883 S.W.2d at 730. Stockman contends the City's immunity from suit is waived because the City was exercising a proprietary function. We reject this argument. The auditing of City records, as it relates to a determination of the validity of warrants issued by the City police, is inherently integral to the City's functioning as an arm of the State and is therefore a governmental function. *See generally Tooke,* 115 S.W.3d at 620–21; 624–25.

■ Stockman further argues that, even if a governmental function is involved, the Local Government Code gives him permission to sue the City on the contract through the "sue and be sued" language applicable to general law municipalities. *See* TEX. LOC. GOV'T CODE ANN. §§ 51.013, 51.033, 51.075 (Vernon 1999). A governmental entity does not waive immunity from suit simply by contracting with a private party. *Pelzel,* 77 S.W.3d at 248; *see also Federal Sign v. Texas Southern Univ.,* 951 S.W.2d 401, 408 (Tex.1997). Express consent is required to show that immunity from suit has been waived. *Id.* Thus, in the instant case, Stockman must establish consent to sue the City. Absent consent, the· trial court lacks jurisdiction. *Id.*

■ A party may establish consent by statute or legislative resolution. *Pelzel,*

77 S.W.3d at 248. The consent must be expressed by "clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2004); *Pelzel,* 77 S.W.3d at 248; *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). Accordingly, we must determine whether the Legislature has by clear and unambiguous language in the Local Government Code's "sue and be sued" provisions waived immunity to suits against municipalities. *See Barfield,* 898 S.W.2d at 291 (stating that clear-and-unambiguous requirement for waiving immunity applies to governmental entities other than the state). Waiver will be found only if the statute in question would be meaningless unless immunity were waived. *See Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 8 (Tex.2000) (holding an anti-retaliation statute meaningless absent waiver of sovereign immunity).

In the instant case, to construe the "sue and be sued" provisions in the Local Government Code as Stockman does overlooks the fact that this language has meaning other than in the context of permitting private party lawsuits that seek to impose liability and recover money damages against a governmental entity. Governmental entities may "be sued" by private parties seeking declaratory relief when alleging a governmental entity or official has acted without legal authority or statutory authority as such suits are not suits against the state. *See e.g., Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994); *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 840 (1958) (citing the rule announced in *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945)). As for the "sue" portion of "sue and be sued," it is merely recognition of the rule that when a governmental entity files suit for damages, or intervenes in an

first time on appeal by the parties or by the     court).

action in which the governmental entity could have brought the same action, it waives immunity from suit for any claim that is incident to, connected with, arises out of, or is germane to the suit or controversy brought by the government entity. *See Reata Const. Corp. v. City of Dallas,* — S.W. 3d ——, ——, 47 Tex. Sup.Ct. J. 408, 2004 WL 726906, at *3 (Apr. 2, 2004).

Finding waiver of governmental immunity in the "sue and be sued" language, the dissent relies on the continued· viability of *Missouri Pacific Railroad Co. v. Brownsville Navigation District,* 453 S.W.2d 812, 813 (Tex.1970). *Missouri Pacific* held that the "sue and be sued" language in a 1925 statute (now section 62.078 of the Texas Water Code) creating a navigation district waived the district's immunity from suit and authorized the railroad's suit against the district. *Missouri Pacific,* 453 S.W.2d at 813. While it is true that *Missouri Pacific* has not been expressly overruled or expressly limited by subsequent Supreme Court decisions, more recent decisions by the Supreme Court,[6] as well as the Legislature's enactment of § 311.034 of the Government Code, appear to indicate waiver of governmental immunity should no longer be so easily found.

For example, in *Wichita Falls State Hospital v. Taylor,* 106 S.W.3d 692, 697–98 (Tex.2003), the Court set out four factors for determining whether there is a clear and unambiguous waiver of immunity from suit: (1) waiver of immunity must be beyond doubt; (2) if there is ambiguity, it must be resolved in favor of retaining immunity; (3) if the Legislature· requires that the State be joined in a lawsuit for which immunity would otherwise attach, immunity is waived; and (4) if a monetary cap or scheme is provided in the statute, the Legislature probably intended to waive immunity. Because the Local Government Code provisions in question do not require the joining of the governmental entity in any lawsuit (the provisions use the permissive term "may") factor 3 does not apply. *See* Tex. Loc. Gov't Code Ann. §§· 51.013, 51.033, 51.075 (Vernon 1999). Factor four is also not implicated in the named sections. Analyzing these sections under factors one and two leads us to conclude that waiver of governmental immunity was not intended as none of the provisions waive immunity "beyond doubt," and the ambiguity present when examining the three provisions together require resolution in favor of retaining immunity.

Finally, we note that there currently exists a split in authority among the courts of appeals as to whether similar "sue and be sued" language waives governmental immunity from suit; with the Dallas and Corpus Christi Courts of Appeals holding such language does not waive governmental immunity from suit while several sister Courts hold to the contrary.[7] As the Su-

---

6. *See Pelzel,* 77 S.W.3d at 251; *Texas Natural Resource Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 857 (Tex.2002).

7. *See Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. Dist.,* 123 S.W.3d 63, 66–68 (Tex.App.-Dallas 2003, pet. filed); *City of Dallas v. Reata Constr. Corp.,* 83 S.W.3d 392, 398 (Tex.App.-Dallas 2002), *rev. on other grounds,* 137 S.W.3d 747 (2004); *Townsend v. Memorial Med. Ctr.,* 529 S.W.2d 264, 267 (Tex.App.-Corpus Christi 1975, writ ref'd n.r.e.). By contrast, *see United Water Servs. v. City of Houston,* 137 S.W.3d 747 (Tex.App.-Houston

[1st Dist.] 2004, pet. filed); *Alamo Community College Dist. v. Browning Constr. Co.,* 131 S.W.3d 146 (Tex.App.-San Antonio 2004, pet. filed); *City of Houston v. Clear Channel Outdoor, Inc.,* —— S.W.3d ——, No. 14–03–00022–CV, 2004 WL 63561 (Tex.App.-Houston [14th Dist.] Jan. 15, 2004, pet. filed); *City of Mexia,* 115 S.W.3d at 621–22 (pet.granted); *Goerlitz v. City of Midland,* 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed); *Tarrant County Hosp. Dist. v. Henry,* 52 S.W.3d 434, 449 (Tex.App.-Fort Worth 2001, no pet.); *Welch v. Coca–Cola Enter., Inc.,* 36 S.W.3d

preme Court's "frustration" continues unabated in its attempt to clearly distinguish between "use" and "non-use" of tangible property so as to determine whether sovereign immunity has been waived under the Tort Claims Act, *see Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588–89 (Tex.2001), the Courts of Appeals of this State continue to struggle with proper application of "sue and be sued," awaiting clear and definitive guidance from the Supreme Court as to the current precedential value of *Missouri Pacific*.

In light of the recent emphasis by the Texas Supreme Court and the Texas Legislature on the necessity of "clear and unambiguous" waiver, we find the "sue and be sued" language in the Local Government Code provisions does not contain clear waiver of immunity language that is present in certain provisions of the Texas Tort Claims Act and of the Whistleblower Act. Applying the firmly-held and consistent principles set out by the Texas Supreme Court and the Texas Legislature since *Missouri Pacific*, we hold that the "sue and be sued" language in sections 51.013, 51.033, 51.075 of the Texas Local Government Code, does not provide a clear and unambiguous waiver of the City's immunity from suit.

■■■ Stockman lastly contends that by accepting and implementing his audit recommendations, and thereby ratifying the "contract," the City waived immunity from suit as it accepted the benefits of the contract. The Supreme Court has rejected that position. Immunity from suit is not waived merely by accepting some of the benefits of a contract. *See Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520–21 (Tex.2002); *IT–Davy*, 74 S.W.3d at 857. The exception to that rule,

not present here, is that a governmental entity cannot agree to settle a lawsuit from which it is not immune and then later claim immunity from suit for breach of the settlement agreement. *Lawson*, 87 S.W.3d at 521–23. Issue two is sustained.

■■■ In issue three, the City argues governmental immunity bars Stockman's intentional infliction of emotional distress claim. The intentional infliction cause of action arises out of allegations involving governmental functions. The Tort Claims Act waives immunity from suit to the extent liability is "created" by the Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1997). Section 101.057(2) states that the Act does not apply to a claim arising out of an intentional tort. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.057 (Vernon 1997); *Tarrant County Hospital Dist. v. Henry*, 52 S.W.3d 434, 440 (Tex.App.-Fort Worth 2001, no pet.); *Nueces County v. Ferguson*, 97 S.W.3d 205, 223 (Tex.App.-Corpus Christi 2002, no pet.). The "sue and be sued" provision in the Local Government Code does not waive immunity to suit for tort claims. The trial court does not have jurisdiction to consider the alleged intentional tort claim against the City. Issue three is sustained.

■■■ Finally, Stockman argues three council members may be sued because their actions were not lawfully authorized by the City. An official may be sued in an individual capacity for wrongful, unofficial conduct, but that matter is not before us in this interlocutory appeal. *See Bagg v. University of Texas Med. Branch at Galveston*, 726 S.W.2d 582, 586 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.).

532 (Tex.App.-Tyler 2000, no pet.); *Loyd v. ECO Resources, Inc.*, 956 S.W.2d 110, 122

(Tex.App.-Houston [14th Dist.] 1997, no pet.).

We have sustained each of the City's appellate issues. This essentially means that the trial court lacked subject matter jurisdiction over the entirety of Stockman's lawsuit against the City as immunity from suit was not waived under any theory. Therefore, we reverse the trial court's order denying the City's plea to the jurisdiction, and we dismiss Stockman's claims against the City for want of jurisdiction. *See* Tex.R.App. P. 43.2(c).

REVERSED AND DISMISSED.

DAVID B. GAULTNEY, Justice, filed a concurring and dissenting opinion.

DAVID B. GAULTNEY, Justice, concurring and dissenting.

In issue two, appellee argues the Local Government Code gives him permission to sue the City on a contract through the "sue and be sued" language applicable to general law municipalities. *See generally* Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033 (Vernon 1999). In 1970, the Supreme Court held "sue and be sued" language in a 1925 statute creating a navigation district waived the District's immunity from suit. *See Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813–14 (Tex.1970). The statute provided that "[a]ll navigation districts established under this Act may, by and through the navigation and canal commissioners, sue and be sued in all courts of this State in the name of such navigation district...."[8] The Supreme Court found the statute was "quite plain and gives general consent for District to be sued in the courts of Texas in the same manner as other defendants." *Missouri Pacific*, 453 S.W.2d at 813.

The Supreme Court has continued to reference the operation of "sue and be sued" language as waiving sovereign immunity. *See generally Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520–21 n. 21 (Tex.2002); *see also Travis Co. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 249–50 (Tex.2002) ("sue and be sued" language in earlier statute "arguably show[ed] intent to waive sovereign immunity ....") (citing *Missouri Pacific* with the parenthetical explanation that *Missouri Pacific* held a "statute containing 'sue and be sued' language provided consent to suit."); *Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 408 (Tex. 1997) (citing *Missouri Pacific* as an example of the Court's recognition of consent to suit in a statute providing the navigation district could "sue and be sued"). Although not citing *Missouri Pacific*, and not finding waiver in the statute at issue, the Court in *Wichita Falls State Hospital* stated, "[W]e have little difficulty recognizing the Legislature's intent to waive immunity from suit when a statute provides that a state entity may be sued or that 'sovereign immunity to suit is waived.'" *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696–97 (Tex.2003).

The Supreme Court's holding in *Missouri Pacific* remains controlling authority. We must apply the holding to the specific statute at issue. As I read the "sue and be sued" language in the applicable provisions of the Local Government Code, a general law municipality is subject to suit on a contract. *See* Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033 (Vernon 1999). In section 51.014, the Local Government Code grants the City the authority to contract, and I view any waiver of immunity to suit intended by the "sue and be sued" language as related to the City's ability to enter into enforceable contracts. *See* Tex.

---

**8.** *See* Act effective Feb. 19, 1925, 39th Leg., R.S., ch. 5, § 46, 1925 Tex. Gen. Laws 7, 21 (current version at Tex. Water Code Ann. § 62.078 (Vernon 2004)).

Loc. Gov't Code Ann. § 51.014 (Vernon 1999).

Of course, *Missouri Pacific* did not expressly limit itself to contract claims. Nor does the Local Government Code's "sue and be sued" provision distinguish between a suit grounded in contract and one grounded in tort or statute. *See* Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033 (Vernon 1999). Because the statute does not make that distinction, following *Missouri Pacific* arguably would lead to a waiver of immunity to suit here on the tort claim and the Whistleblower claim, as well as the contract claim. But a municipality's immunity on tort claims relating to governmental functions has existed alongside the statutory "sue and be sued" language.[9] In 1987, the Legislature added section 101.0215 to the Tort Claims Act, defined many functions of a municipality as governmental, and waived the municipality's immunity from suit and liability to the limited extent allowed under the Act.[10] *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021(Vernon 1997), § 101.0215 (Vernon Supp.2004); *see also* Tex. Civ. Prac. & Rem.Code Ann. 101.025(a) (Vernon 1997) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). Therefore, when a party sues a municipality for tort claims involving governmental functions, a court does not have jurisdiction unless those claims fit within the terms of the Tort Claims Act.

Just as we must follow the Supreme Court precedent of *Missouri Pacific,* we are not at liberty to ignore the Tort Claims Act. The Tort Claims Act's limited waiver of immunity to suit must be harmonized with the "sue and be sued" waiver in the Local Government Code and the holding in *Missouri Pacific.* The statutes may be harmonized by restricting the "sue and be sued" waiver to claims based on contracts. In this case, the Tort Claims Act governs the extent of the waiver of immunity to suit in Stockman's tort claim, and the Whistleblower Act governs waiver of immunity to suit in his Whistleblower claim.

*Missouri Pacific* must be narrowly read in this manner if the Local Government Code provision is to be consistent with the Tort Claims Act. Although arising out of a wrongful death claim, *Missouri Pacific* involved the railroad's indemnity claim against the governmental entity. *Missouri Pacific,* 453 S.W.2d at 812–13. The basis of the indemnity claim was a written agreement. *Id.* Reading *Missouri Pacific* narrowly, the District's authority to enter into that written agreement carried with it the possibility of being sued for a violation of the agreement.

The waiver of immunity to suit intended by the "sue and be sued" language appears to be coextensive with the power given to the City to enter into an enforceable contract. I would hold the "sue and be sued" provision in the Local Government Code waives immunity from suit only on the contract claim.[11] I therefore respectfully

9. *See City of Galveston v. Posnainsky,* 62 Tex. 118, 125 (1884); *see also* Act approved Jan. 27, 1858, 7th Leg., R.S., ch. 61, § 9, 1858 Tex. Gen. Laws 69, 70, *reprinted in* 4 H.P.N. Gammel, The Laws of Texas, 1822–1897, at 941, 942 (Austin, Gammel Book Co. 1898).

10. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, sec. 101.0215, 1987 Tex. Gen. Laws 37, 47–48 (amended 1997, 1999, 2001) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 101.0215 (Vernon Supp.2004)).

11. Two law review articles read the "sue and be sued" provisions as referring to an entity's legal capacity to sue and be sued—as giving a particular entity a legal existence in the courts. *See* George C. Kraehe, *"There's Something About Cities: Understanding Proprietary Functions of Texas Municipalities and Governmental Immunity."* 32 Tex. Tech. L.Rev. 1, 35–36 (2000); A. Craig Carter, *"Is Sue and Be Sued Language a Clear and Unam-*

dissent from the majority's resolution of issue two, but I concur on issues one and three.

*biguous Waiver of Immunity?"* 35 St. Mary's L.J. 275, 289–300 (2004).