The CITY OF HOUSTON, Appellant,

v.

Steve WILLIAMS, et al., Appellees.

No. 14–04–01108–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 23, 2005.

Rehearing Overruled Jan. 19, 2006.

13. The file also contained an allegation that A.N. had inserted an object into her younger sister's vagina.

See also 99 S.W.3d 709.

**412**

Timothy J. Higley, Houston, for appellant.

E. Troy Blakeney, Richard Charles Mumey, Vincent L. Marable III, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justice FROST and Senior Chief Justice MURPHY.*

## OPINION

ADELE HEDGES, Chief Justice.

The City of Houston, defendant below, brings this interlocutory appeal to challenge the trial court's entry of partial judgment in favor of appellees, who are former fire fighters for the City.[1] In its first two issues, the City contends that the trial court erred by improperly denying its plea to the jurisdiction. In its remaining two issues, the City contends that the trial

---

* Senior Chief Justice Paul C. Murphy sitting by assignment pursuant to TEX. GOV'T CODE § 74.003(h).

1. Williams, who originally brought suit to overturn a temporary suspension he received, appears to be the only non-retiree plaintiff. Later, the other fire fighters, all retired, joined in this suit. For simplicity, we refer to all appellees as "the fire fighters." A complete list of their names appears in Exhibit A.

court erred by improperly granting partial judgment on the fire fighters' two claims. Finding that the trial court properly denied the City's plea to the jurisdiction and properly granted partial judgment in the fire fighters' favor, we affirm.

## I. The City's Plea to the Jurisdiction

The City's plea to the trial court's jurisdiction asserted three distinct grounds: 1) the City enjoyed governmental immunity, 2) the fire fighters could not sue the City because they had not exhausted their administrative remedies, and 3) the fire fighters could not seek money damages under the Declaratory Judgments Act. The City re-urges the first two grounds in its first issue on appeal and re-urges its third ground in its second issue on appeal.

### A. The City's Asserted Governmental Immunity

#### 1. Standard of Review

 Because governmental immunity from suit defeats a trial court's jurisdiction, it is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004) (citing *Tex. Dept' of Transp. v. Jones,* 8 S.W.3d 636, 637 (Tex.1999)). Determining whether a court has subject matter jurisdiction is a question of law. *Id.* at 226 (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002)). When a plea to the jurisdiction challenges the pleadings, we decide whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *Id.* (citing *Tex. Ass'n of Bus. v. Tex. Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993)). However, when a plea to the jurisdiction challenges the exis-

tence of jurisdictional facts, we also consider relevant evidence submitted by the parties when that evidence is necessary to resolve the jurisdictional issues raised, just as the trial court is required to do. *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000)). We review a trial court's ruling on subject matter jurisdiction de novo. *Id.* at 228 (citing *IT–Davy,* 74 S.W.3d at 855).

 The City enjoys governmental immunity.[2] *See City of Houston v. Clear Channel Outdoor, Inc.,* 161 S.W.3d 3, 5 (Tex.App.-Houston [14th Dist.] 2004, pet. filed); *see also San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 283 (Tex.1996) (cities and counties enjoy sovereign immunity). This immunity provides two types of protection: immunity from liability and immunity from suit. *Miranda,* 133 S.W.3d at 224 (citing *Jones,* 8 S.W.3d at 638); *Federal Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997), *superceded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 593 (Tex.2001). We address both below.

#### 2. Immunity from Liability

 The City argues that it enjoys immunity from liability because the activities that underlie this suit—fire protection and related personnel matters, such as manning and staffing its fire department—are governmental functions. *See* TEX. CIV. PRAC. & REM.CODE § 101.0215(a)(1) (fire protection is a governmental function); *Gates v. City of Dallas,* 704 S.W.2d 737, 739 (Tex.1986) (municipal corporations enjoy some degree of immunity when engaged in governmental functions), *superceded by statute as stated in City of*

---

**2.** The term sovereign immunity refers to the State's immunity, while governmental immunity protects subdivisions of the State, such as the City. *See Wichita Falls State Hosp. v. Tay-*

*lor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). The case law sometimes uses the terms "sovereign immunity" and "governmental immunity" interchangeably.

*Terrell v. McFarland,* 766 S.W.2d 809, 813 (Tex.App.-Dallas 1988, writ denied). However, the City contracted with the fire fighters to work for the City. As the Texas Supreme Court stated in *Little–Tex:*

> When the State contracts, it is liable on contracts made for its benefit as if it were a private person. *Federal Sign,* 951 S.W.2d at 405; *State v. Elliott,* 212 S.W. 695, 697–98 (Tex.Civ.App.-Galveston 1919, writ ref'd). Consequently, when the State contracts with private citizens it waives immunity from liability. *See Federal Sign,* 951 S.W.2d at 408.

39 S.W.3d at 594. Thus we conclude that the City waived its immunity from liability by contracting with the fire fighters. *See id.; Clear Channel,* 161 S.W.3d at 5 (city had waived immunity from liability simply by contracting with a private party); *Mokwa v. City of Houston,* 741 S.W.2d 142, 145 (Tex.App.-Houston [1st Dist.] 1987, writ denied) (trial court had jurisdiction over police officer's suit against city for back pay) (citing *City of Galveston v. Russo,* 508 S.W.2d 882, 884 (Tex.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.) (trial court had jurisdiction over fire fighters' suit for wages they contended city owed to them)).

### 3. Immunity from Suit

We now decide whether the Legislature has waived the City's immunity from suit by clear and unambiguous language. *See Little–Tex,* 39 S.W.3d at 594 (citing *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994)). Section 51.075 of the Local Government Code applies to municipalities, such as the City, and provides that, "[t]he municipality may plead and be impleaded in any court." TEX. LOCAL GOV'T CODE § 51.075 This court's opinion in *Clear Channel* compels us to hold that this language clearly and unambiguously waives the City's immunity from suit. *See* 161 S.W.3d at 8; *Goerlitz*

*v. City of Midland,* 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed) ("plead and be impleaded" waives immunity from suit); *Knowles v. City of Granbury,* 953 S.W.2d 19, 22 (Tex.App.-Fort Worth 1997, writ denied) (same).

In addition, the City's charter states that the City can "sue and be sued." *See* CITY OF HOUSTON CHARTER, art. II, § 1 (Act of 1905). The Texas Supreme Court has held that "sue and be sued" language is sufficiently clear and unambiguous to waive immunity from suit. *See Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970); *see also United Water Servs., Inc. v. City of Houston,* 137 S.W.3d 747, 755 (Tex.App.-Houston [1st Dist.] 2004, pet. filed) ("sue and be sued" language in City's charter waives immunity from suit).

Thus, we conclude the City does not enjoy governmental immunity either from liability or from suit. The trial court did not err by denying the plea to the jurisdiction on this ground.

### B. Exhaustion of Administrative Remedies

The City asserts that the trial court lacked jurisdiction because, according to the City, the fire fighters failed to exhaust the administrative remedies available to them, both as active employees and after their retirement. As we discuss below, the fire fighters could not use the grievance procedures while they were employed because the City had not taken any action yet for which the fire fighters could file a grievance. Additionally, once the City took such an action, the fire fighters already had retired, and the statutory provisions do not require non-employees to use the grievance procedures.

### 1. During the Fire Fighters' Employment

The City initially asserts that the fire fighters failed to use the grievance procedures outlined in Chapter 143 of the Local Government Code while they were still employed by the fire department. However, the fire fighters were not required to file a grievance until they were aggrieved, and their grievance did not occur while they were employed by the City.

Chapter 143 details a four-step grievance procedure. TEX. LOCAL GOV'T CODE § 143.127(d). To begin a grievance action, "a fire fighter ... must file a completed written step I grievance form ... within 30 days *after the date the action or inaction for which the person feels aggrieved occurred.*" *See id.* § 143.128(a) (emphasis added). In this case, the actions the fire fighters are complaining of did not occur until they retired and the City paid them their lump-sum termination payouts. With respect to the fire fighters' first claim, which we refer to as the Debit Dock claim, the fire fighters' complaint is that the City improperly deducted the previously-paid overtime amounts from their termination payouts. With respect to the fire fighters' second claim, which we refer to as the Termination Pay claim, the fire fighters' complaint is that the City paid them only their regular salary without premium pay for accrued but unused leave time. Neither action took place until the City paid the fire fighters their termination payouts; this occurred *after* the fire fighters had retired from the department. *See Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 852 (Tex.2000) (claim not ripe when school district had adopted policy but no child had yet been affected by it); *see*

*also City of Grand Prairie v. M.B. Capital Investors, Inc.,* No. 05–95–00921–CV, 1996 WL 499790, *4 (Tex.App.-Dallas Aug.27, 1996, writ dism'd) (not designated for publication) (ripeness doctrine prevents judicial interference until parties "feel the effects of the decision in a concrete way") (citing *City of El Paso v. Madero Dev.,* 803 S.W.2d 396, 400 (Tex.App.-El Paso 1991, writ denied)); *but see Ridgeway's, Inc. v. Payne,* 853 S.W.2d 659, 663 (Tex. App.-Houston [14th Dist.] 1993, no writ) (alleged unlawful employment practice of providing reduced life insurance benefits for older employees occurred when insurance policy was adopted or, at the latest, when its terms were communicated to employee). Thus, we conclude the fire fighters were not required to file a grievance while they were employed.[3]

### 2. After the Fire fighters Retired

The City next contends that the City has "clear, published grievance procedures for filing a grievance after employment with the City has ended," and argues that the fire fighters were required to file a complaint with the Office of the Inspector General. This Office investigates allegations of employee misconduct concerning City employees. *See* Executive Order No. 1–39 § 2 (eff. date Feb. 02, 2004) (establishing Office of Inspector General for Investigation of Employee Misconduct). Although the Executive Order establishing this Office provides that City employees have an affirmative duty to report incidents of criminal or administrative misconduct by City employees, nothing in the Order requires *former* employees to submit their

---

**3.** The City argues that the fire fighters could have filed a grievance when they were informed of the amounts of their lump-sum payments. But this contention ignores the statutory language, which provides an administrative remedy only *after* the City takes some sort of action. *See* TEX. LOCAL GOV'T CODE

§ 143.127(d). This conclusion is reinforced by the fact that, with respect to one fire fighter who completed all four steps of the grievance process, the Civil Service Commission ultimately found that it "lacked jurisdiction" because his claim was "not ripe."

complaints to this Office before pursuing judicial relief. *See* Executive Order No. 1–39 § 11 (describing duties of City employees).

Finally, we also conclude that, after they had retired, the fire fighters were not subject to the grievance process outlined in Chapter 143 of the Local Government Code. Once the fire fighters retired, they were no longer "fire fighters" under the definition the Local Government Code provides. *See* Tex. Local Gov't Code § 143.003 (defining "fire fighter" as a member of a fire department). Thus, they could no longer use the grievance procedures Chapter 143 provides because only a fire fighter—a member of the fire department—can file a grievance. *See id.* § 143.127(a) (a "fire fighter" may file a grievance). In fact, the parties stipulated that, at the time the fire fighters received their termination payouts, they were no longer employees and, as such, they were not subject to the jurisdiction of the City's Civil Service Commission or the grievance process of Chapter 143 of the Local Government Code.[4]

Accordingly, we reject the City's contention that it enjoys immunity from suit because the fire fighters failed to exhaust their administrative remedies before filing suit, and we overrule the City's first issue.

### C. Declaratory Judgments Act

██ The City also asserts that the trial court lacked jurisdiction because the fire fighters, who are seeking money damages, are attempting to use the Declaratory Judgments Act to circumvent the City's governmental immunity. *See IT–Davy*, 74 S.W.3d at 856 ("[P]rivate parties cannot

circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim."); *see also City of San Benito v. Ebarb*, 88 S.W.3d 711, 721 (Tex.App.-Corpus Christi 2002, pet. denied) (citing *IT–Davy*, 74 S.W.3d at 855–56).

This assertion fails for three reasons. First, the trial court's judgment expressly reserves any determination of money damages for a later date. Second, the fire fighters asked the trial court to, and the trial court did, construe the relevant statutory provisions before declaring that the City's methods of calculating the fire fighters' pay did not comply. *See IT–Davy*, 74 S.W.3d at 859–60 (emphasizing that the plaintiff was "not asking the trial court to construe a legislative enactment" but, instead, sought a declaration that the plaintiff "performed additional work ... and, thus, the [defendant] owed [the plaintiff] more money"). Finally, and most importantly, the fire fighters' request for declaratory relief cannot represent an attempt to circumvent the City's immunity because, as we have just held, the City enjoys no governmental immunity in this case. *See Ebarb*, 88 S.W.3d at 721 ("Therefore, sovereign immunity is not waived for a request for declaratory relief that seeks money damages and such a suit can only be maintained *with legislative consent.*") (citing *IT–Davy*, 74 S.W.3d at 859–60) (emphasis added).

Thus, the fire fighters did not fail to exhaust their administrative remedies, and the trial court did not err in overruling the City's plea to the jurisdiction on this

---

4. The City agreed to the following stipulations: "At the time each Plaintiff received their termination pay check, which included the dock of previously paid overtime, they were no longer employees of the City of Houston," and "At the time each Plaintiff received their termination pay check, Plaintiffs were no longer subject to the jurisdiction of the Civil Service Commission of the City of Houston, Texas or the grievance procedure in Texas Local Government Code, Chapter 143."

ground. We overrule the City's second issue.

## II. Factual Background

To understand the parties' substantive arguments, and the City's remaining two issues on appeal, it is necessary to understand how the City schedules the fire fighters' work cycles and how the City calculates the fire fighters' pay, both while employed and upon retirement. We initially address the fire fighters' work cycles and the City's method for determining when a fire fighter is entitled to overtime pay. These issues are relevant to the Debit Dock claim. We then turn to the City's method for calculating the amount it pays to fire fighters when they take approved leave and for calculating the amount of the fire fighters' lump-sum termination payouts upon retirement. These issues are relevant to the Termination Pay claim.

### A. The Fire Fighters' Work Cycles

The event giving rise to the fire fighters' Debit Dock claim began when the City revised its fire fighters' work schedules in 2001.[5] Before then, the fire fighters were scheduled to work twenty days during each 72–day work cycle. A fire fighter's work day is actually a 24–hour shift. The twenty scheduled work days included "debit days." The City included debit days to ensure that each fire fighter worked an average of 46.7 hours each week. Historically, fire fighter attendance on debit days was haphazard; the fire fighters were more apt to call in sick or use vacation time on a debit day than on another work day. Additionally, the City's fire department was understaffed.

In late 2001, the City devised a new work schedule, designed to encourage fire fighters to report to work on debit days, and to provide 39 additional fire fighters for each shift. In November of 2001, the City changed the fire fighters' work schedule accordingly. The work cycle continued to span 72 days. Importantly, though, the City now required its fire fighters to work an additional twenty-four hours during each cycle, resulting in 21 scheduled work days during each 72–day work cycle. This resulted in an average work week of 49 hours.

Rather than allocating the additional twenty-four hour period to a single day, the City split the 24 additional hours into three eight-hour shifts. The City then assigned one eight-hour shift to each of three debit days. The City's policy was to pay overtime rates for those eight-hour shifts on debit days only if the fire fighter actually worked the shift. In other words, if a fire fighter did not work because he was on approved sick or vacation leave on his scheduled debit day, then the fire fighter still received his usual salary, but did not receive overtime pay. If a fire fighter actually worked on his debit day, then the fire fighter received sixteen hours of regular pay in addition to eight hours of overtime pay.

As mentioned, the new schedule began in November of 2001. However, the fire fighters' paychecks did not reflect the City's policy. The City initially paid the fire fighters for eight overtime hours even on debit days when the fire fighters did not actually work. But when the fire fighters retired, the City deducted the amount of overtime the City alleged was paid mistakenly from the fire fighters' lump-sum termination payouts. In their

---

**5.** According to the City's counsel at oral argument, the City no longer uses the revised work schedule that gave rise to this litigation.

The revised work schedule was in effect for about two years.

Debit Dock claim, the fire fighters assert that the City improperly reduced their lump-sum termination payouts by docking the previously-paid overtime.

## B. The City's Method for Calculating Termination Pay

While employed by the City's fire department, a fire fighter's salary includes "regular pay," and may include "premium pay."[6] A fire fighter's regular pay includes "base pay," which is the same for all fire fighters, and "longevity pay," which is based upon an individual fire fighter's length of service with the fire department. *See* TEX. LOCAL GOV'T CODE § 143.110(b). Premium pay includes "assignment pay" and "educational incentive pay." *Id.* A fire fighter receives assignment pay for performing specialized functions within the department, such as being an emergency ambulance attendant or being part of the hazardous materials response team. A fire fighter receives educational incentive pay for completing major fields of study in fire protection.

As part of their compensation, fire fighters also accrue sick leave and vacation time. If a fire fighter takes an approved sick day or vacation day, then the City pays the fire fighter his or her full salary. A fire fighter's full salary includes regular pay and any premium pay to which the fire fighter is entitled. When a fire fighter retires, he or she is entitled to a lump-sum termination payout for any sick days and vacation days that were accrued but not

taken. The City calculated the fire fighters' lump-sum termination payouts using only the fire fighters' regular pay, and not any premium pay the fire fighters might have earned. In the fire fighters' Termination Pay claim, they assert the City should have calculated their lump-sum termination payouts using the fire fighters' regular pay *and* any premium pay to which they were entitled.

Having set the factual backdrop for the fire fighters' two claims, we now address the procedural posture of this appeal.

## III. Procedural Background

As mentioned above, the fire fighters have two claims involved in this appeal, the Debit Dock claim and the Termination Pay claim.[7] In the first, the fire fighters assert that the City improperly docked their lump-sum termination payouts for overtime payments that the City alleged were made mistakenly. In the second, the fire fighters assert that the City incorrectly reduced their lump-sum termination payouts by compensating them only at their base salary, and not including any premium salary to which they were entitled.

In asserting these two claims, in fact, the fire fighters requested several types of relief in the underlying suit. The fire fighters asked for declaratory relief, money damages, attorney's fees, costs, and injunctive relief.[8]

After both sides had filed multiple motions for summary judgment, the trial

---

6. The Texas Local Government Code and the City's Code of Ordinances prescribe the methods used to calculate a fire fighter's pay. Because we analyze the statutes in greater detail later, we describe their requirements only generally here.

7. The remaining cause of action, to overturn Steve Williams's temporary suspension, remained under the original cause number, 2002–22690, while the causes of action in-

volved in this appeal received the cause number 2002–22690–A.

8. In its briefing to this court, the City asserts that permanent injunctive relief is inappropriate because an adequate remedy at law exists, namely, money damages. However, because the trial court's judgment expressly reserves any determination of injunctive relief for a later date, we do not reach this issue.

court scheduled a bench trial. The case was tried on stipulated facts and exhibits, and the trial court entered a partial judgment. The partial judgment does three things. First, it rejects the City's arguments that the trial court lacked jurisdiction, either because the City enjoys immunity, or because the fire fighters failed to exhaust their administrative remedies. Second, the judgment states that the trial court has construed the relevant statutory provisions and concluded that the City's methods of calculation—both for the fire fighters' Debit Dock claim and for their Termination Pay claim—are not in compliance with those provisions. And finally, the judgment reserves any determinations of damages, attorney's fees, and injunctive relief for a later date.

The City then brought this interlocutory appeal, raising four issues for our review.[9] We have already disposed of the City's first two issues, in which it asserted that the trial court lacked jurisdiction. In its third issue, the City argues that, because a logical construction of the relevant statutory provisions requires a fire fighter to be physically present on the job to receive overtime pay, the trial court erred in granting judgment in the fire fighters' favor on the Debit Dock claim. Finally, the City argues that, because it is only required to pay the lump-sum termination payouts based upon base salary and longevity, the trial court erred in granting judgment in the fire fighters' favor on the Termination Pay claim. We address each of the City's contentions below.

## IV. Debit Dock Claim

██ In their third issue, the City contends that the trial court erred in granting partial judgment in the fire fighters' favor on their Debit Dock claim. The City and the fire fighters submitted this case to the trial court under an agreed statement of facts and exhibits. *See* TEX.R. CIV. P. 263 ("Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk ... and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause."). In an appeal from a trial court's judgment on an agreed case, the only issue on appeal is whether the trial court properly applied the law to the agreed facts. *Abbott v. Blue Cross & Blue Shield of Tex., Inc.*, 113 S.W.3d 753, 757 (Tex.App.-Austin 2003, pet. denied) (citing *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied); *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex.App.-Houston [1st Dist.] 1993, writ denied)).

We initially interpret the applicable statutes before turning to the City's arguments in urging reversal.

**A. The statute requires the City to pay the fire fighters for 24 hours of overtime during each 72–hour cycle.**

██ Section 142.0017(b) of the Local Government Code states that fire fighters cannot be required to work more than an average of 46.7 hours a week during the 72–day work cycle. TEX. LOCAL GOV'T CODE § 142.0017(b). This section also provides that, if a fire fighter is required to work more than an average of 46.7 hours a week during the work cycle, then he or she is entitled to be compensated for overtime. *Id.*

---

9. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(d) (district court may issue a written order for interlocutory appeal in a civil action that would not otherwise be appealable if: 1) the parties agree that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion; 2) an immediate appeal may materially advance the litigation's ultimate termination; and 3) the parties agree to the order).

Therefore, we must count the hours per week a fire fighter averages during the 72–day work cycle to determine whether he or she is entitled to overtime. *See id.* Section 142.0017(e) specifies what hours must be included in the computation of the average number of hours in a work week. *Id.* § 142.0017(e). This section states that, in addition to hours that are actually worked, hours spent on-call and on approved leave also must be counted. *Id.* at § 142.0017(e)(1), (2).

Therefore, the proper method to determine whether a fire fighter is entitled to overtime is as follows. First, the City must add: 1) all hours the fire fighter actually worked; 2) all hours the fire fighter was on-call as provided in 142.0017(e)(1); and 3) all hours the fire fighter was on approved leave as provided in 142.0017(e)(2). *See id.* This yields the total number of hours for the 72–day work cycle. Next, the City must divide this amount by the number of weeks in the 72–day work cycle to yield the average number of hours per work week. If the average number of hours per week exceeds 46.7 hours, then the City must compensate the fire fighter for the additional hours. *See id.* § 142.0017(b) (overtime required for hours that exceed a 46.7 hour per week average).

Under the revised schedule, each 72–day work cycle contained 24 hours in excess of the statutorily-mandated 46.7–hour average work week. Thus, we conclude the City was required to pay the fire fighters for 24 hours of overtime pay during each 72–day work cycle.

**B. The City's arguments are not persuasive.**

Nevertheless, the City advances several arguments in support of its contention that the trial court erred in granting partial judgment in the fire fighters' favor on their Debit Dock claim. We address each of the City's arguments in this regard below.

**1. By statute, the City cannot exclude hours spent on approved leave from its computation of the average number of hours in a work week.**

The City initially relies upon section 142.0017(e)'s use of the conjunctive ("and" rather than the disjunctive "or") to contend that hours are included only if the fire fighter is both on-call *and* on approved leave. *See* TEX. LOCAL GOV'T CODE § 142.0017(e). We disagree. This section specifies which hours are to be counted in certain calculations, listing hours that are spent on-call and hours that are spent on approved leave. *See id.; see also Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 502 (Tex.App.-Dallas 1989, writ denied) (one use of "and" is to refer to either or both of two alternatives) (citing *Neighborhood Comm. on Lead Pollution, et al. v. Bd. of Adjustment of Dallas*, 728 S.W.2d 64, 68 (Tex.App.-Dallas 1987, writ ref'd n.r.e.)). A logical reading of the section's use of the conjunctive simply requires the City to include both types of hours in its computation.[10] *See Elgin Bank of Tex. v. Travis County, Texas*, 906 S.W.2d 120, 121 (Tex. App.-Austin 1995, writ denied) (per curiam) ("The word 'and' may be construed

---

10. This interpretation also avoids an absurd result; the City's interpretation would include only these hours if a fire fighter remained on-call while he or she was sick, or even away on vacation. *See* TEX. GOV'T CODE § 311.023 (court may consider consequences of a particular construction); *City of Houston v. Jack-*

*son*, 42 S.W.3d 316, 322 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd w.o.j.) (rejecting constructions that would frustrate legislative intent and impose a patently absurd result) (citing *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991)).

as a disjunctive to prevent an absurd result.") (citing *Board of Ins. Comm'rs v. Guardian Life Ins. Co. of Tex.*, 142 Tex. 630, 180 S.W.2d 906, 908–09 (Tex.1944)).

**2. The City's reliance on *Tijerina* is misplaced.**

In its briefing, the City mistakenly relies upon the Texas Supreme Court's decision in *Tijerina* to support its contention that it was not required to pay the fire fighters overtime. *See Tijerina v. City of Tyler*, 846 S.W.2d 825 (Tex.1992). The City contends that the Texas Supreme Court's holding in that case permits overtime payments only for "official work assignment[s] or hours physically at work." This argument is an iteration of the City's position that the fire fighters must have been available for the taxpayers' benefit—and not on approved leave—in order to receive overtime pay. The City misreads *Tijerina*.

The only issue in *Tijerina* was whether the City was required to pay overtime when a fire fighter was on-call but not physically at work. *Id.* at 826. We do not construe its holding to mean the City must pay overtime *only* when a fire fighter is on-call or physically present at work, as the City urges.

**3. Section 143.0017(f) does not permit the City to designate particular hours during the work cycle as the only ones eligible for overtime compensation.**

Next, the City argues that it is not required to pay overtime unless the fire fighter "actually worked" during the three 8–hour periods the City designated as overtime shifts. *See* TEX. LOCAL GOV'T CODE § 142.0017(f) (fire fighter is entitled to be paid overtime "for the excess hours worked"). In making this argument, the City ignores the statutory emphasis on the

entire 72–day work cycle, and the *average* hours per work week; it also ignores the statutory directive that the entitlement to overtime compensation is made without regard to hours worked in a particular work week.

Subsection (f) of section 142.0017 provides that, if a fire fighter is required to work for more hours during "a work cycle [,]" then overtime must be paid "for the excess hours worked *without regard to the number of hours worked in any one week of the work cycle.*" *Id.* (emphasis added).[11] Thus, the statutory scheme looks to the *entire* 72–day work cycle and requires overtime for all hours that exceed a weekly *average* of 46.7 hours. And, in calculating the weekly average, the statute requires the City to include hours spent on approved leave.

The City stipulated that its revised schedule contained an additional 24 hours during each 72–day work cycle. This schedule obtains regardless of whether the City considers these additional hours to have been scheduled at the very beginning, somewhere in the middle, or at the end of the cycle. *See id.* at § 143.0017(f) (entitled to overtime *without regard* to the number of hours worked in any one week of the work cycle). Accordingly, because the statute requires overtime compensation for the additional 24 hours "without regard to the number of hours worked in any one week of the work cycle," the City cannot escape that obligation by designating certain shifts as the only ones eligible for overtime compensation.

**4. On appeal, the City cannot disregard its stipulation that a debit day constitutes a 24–hour work assignment.**

11. The fire fighters point out the absence of any cited statutory authority for the City to designate three eight-hour shifts as the only

24 hours during the work cycle that are eligible for overtime compensation.

Next, the City argues that the last eight hours of a debit day shift—those hours that the City contends were the only ones eligible for overtime—were, in fact, hours during which the fire fighters were off-duty entirely.[12] Thus, the City contends, because the fire fighters are off-duty for the final eight hours of a debit day shift, the City was not required to pay them at all, much less to pay them at overtime rates. This argument, however, directly contradicts the record. The fire fighters and the City stipulated: "Each 24–hour shift, *including a debit day*, is a required work assignment that commences at 6:30 a.m. and *lasts 24 hours* until 6:30 a.m. the following morning." Stipulation # 15 (1st Set of Stipulations) (emphasis added).

**5. We do not look to legislative intent when, as here, the statute unambiguously requires the City to include hours spent on approved leave in its calculation of the average hours in a work week.**

The City asserts that the legislative history of section 142.0017 indicates that the Legislature did not intend to include hours spent on approved leave in the calculation of hours worked. However, the unambiguous language of the statute clearly requires the City to include these hours in its calculation of the average number of hours in a work week. Section 142.0017(e) states, "In computing the hours in a work week or the average number of hours in a work week . . . all hours are counted . . . that are sick time, vacation time, meal time, holidays, compensatory time, death in the family leave, or any other authorized leave." *See* TEX. LOCAL GOV'T CODE § 142.0017(e). Contrast this with the language the Legislature used in section 142.0015(d), which does not apply to the City because it applies only to smaller cities: "In computing the hours in a work week or the average number of hours in a work week . . . vacation, sick time, holidays, time in lieu of holidays, or compensatory time *may be excluded* as hours worked." *See id.* § 142.0015(d) (emphasis added).

Because section 142.0017(e) unambiguously requires the City to include hours spent on approved leave in its calculation, we need not reach the City's legislative history argument. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 399 (Tex.2000) ("Because the [statutory] language . . . is unambiguous, we need not look to the prior law in determining legislative intent; instead, we may presume that the Legislature intended the plain meaning of its words."); *Fleming Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999) ("But prior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety, unless there is an error such as a typographical one."); *see also In re Doe,* 19 S.W.3d 346, 365 (Tex.2000) (Gonzales, J., concurring) ("[T]he duty of a judge is to follow the law *as written by the Legislature.*") (emphasis added).

**6. Requiring the City to pay the fire fighters is not unconstitutional.**

█ Next, the City contends that requiring it to pay the fire fighters for overtime in this situation would violate provisions of the Texas Constitution. The City contends that sections 44 and 53 of article III of the Texas Constitution— which prohibit additional compensation after services have been rendered—would be violated if the City had to pay the fire

---

**12.** The City contends that a debit day consists of only 16 working hours. Thus, according to the City, the fire fighters were off-duty for the remaining eight hours of the 24–hour day.

fighters overtime in this situation.[13] The City also contends that requiring it to pay overtime in this situation would violate section 51 of the same article—which prohibits the grant of public monies for an unauthorized purpose. *See id.* § 51.[14] These contentions fail for the reasons that follow.

As explained previously, the relevant statutory provisions require the City to pay the fire fighters overtime because, when all hours spent working, on-call, or on approved leave are counted, the fire fighters have been required to work twenty-four hours of overtime during each 72–day work cycle. Thus, the City is not giving the fire fighters *additional* compensation, it is paying the fire fighters the compensation that the City has always been required to pay by the Local Government Code. We conclude this does not violate sections 44 and 53 of article III of the Texas Constitution. *See City of Orange v. Chance,* 325 S.W.2d 838, 840 (Tex.Civ.App.-Beaumont 1959, no writ) ("[T]he prohibition [of section 53] does not apply to payment of any fund or sum based upon the contract of employment nor does it apply to the method or time of payment."); *City of Wichita Falls v. Cox,* 300 S.W.2d 317, 321 (Tex.Civ.App.-Fort Worth 1957, writ ref'd n.r.e.) ("The Constitution of Texas, Art. 3, sec. 53, ... does not inhibit the award to appellees of the 'back pay' to which they were entitled but not paid ..., since appellees were entitled to be paid the 'back pay' at the time they performed services for which it was payable.").

Finally, paying the fire fighters for the services they have rendered to the public does not implicate the evil—gratuitous grants from public funds—that section 51 seeks to prevent. *See Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 740 (Tex.1995) ("A transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a lending of credit or grant of public funds in violation of article III, sections 51 and 52."); *Bailey v. State,* 15 S.W.3d 622, 626 (Tex.App.-Dallas 2000, no pet.) (same); *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737, 742 (1960) ("The purpose of [section 51] is to prevent the application of public funds for private purposes; in other

---

**13.** Section 44 provides:

The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law.

Tex. Const. art. III, § 44.

Section 53 provides:

The Legislature shall have no power to grant, or to authorize any county or munici-

pal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law.

*Id.* § 53.

**14.** Section 51 provides:

The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; provided that the provisions of this Section shall not be construed so as to prevent the grant of aid in cases of public calamity.

Tex. Const. art. III, § 51.

words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever."); *see also Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 392 (Tex.2002) (J., Owen, dissenting) ("[A] political subdivision may make expenditures for goods or services ... as long as those expenditures serve a legitimate public purpose.").

We conclude that requiring the City to pay the fire fighters statutorily-authorized compensation that they have earned for services rendered for the public good does not violate the Texas Constitution.

### 7. The fire fighters have a right to enforce payment in accordance with the Texas Local Government Code.

In their final contention with respect to the fire fighters' Debit Dock claim, the City states that it has the discretion to set its fire fighters' work schedules and determine their wages. According to the City, the fire fighters cannot obtain relief because the Texas Supreme Court has held that their positions and corresponding wages are not property rights protected by due process or otherwise. *See City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788 (1951). We disagree with the City's interpretation of the holding in *Hancock*. In that case, the Texas Supreme Court found that a fire fighter did not have an inherent right to appeal when the statute was silent regarding a right to appeal, and no vested property right was at stake. *See id.*, 239 S.W.2d at 791–92. The Court held that the fire fighter did not have a vested property right to be assigned to a particular position, and concomitantly to that position's assigned wages, under the Due Process Clause of the Constitution. *See id.* at 791. The Court was not addressing the situation we have in this case: a claim for wages earned and authorized under the Texas Local Government Code. *See id.* at 791–92. The City has not cited, and we have not located, any authority to the effect that the fire fighters do not have a right to be paid by the City for the beneficial services they have rendered.

In sum, we find the City's arguments unpersuasive. The trial court did not err in granting partial judgment in the fire fighters' favor on the Debit Dock claim. We overrule the City's third issue.

### V. Termination Pay Claim

In its final issue, the City contends that the trial court erred in granting partial summary judgment in the fire fighters' favor on their Termination Pay claim. The City asserts that its own ordinances and the Local Government Code permit it to calculate the amount it owes to fire fighters for unused vacation and sick leave based only upon their regular pay (base pay plus longevity pay). The fire fighters, on the other hand, argue that the City must also include premium pay, such as assignment pay and educational incentive pay, in the calculation.

#### A. The City's Ordinance

The City initially points out that the Local Government Code allows it to set the amount of assignment pay, and the conditions under which it is payable, by ordinance. *See* TEX. LOCAL GOV'T CODE § 143.114(c). The City then contends that its ordinance—which states that a fire fighter's salary for accrued leave time includes only base pay plus longevity pay, as termination payout, and not any form of premium pay—allows the City to pay the fire fighters as it did. *See* CITY OF HOUSTON CODE OF ORDINANCES NO. 34–63.

We find the City's argument unavailing. Although the Local Government Code allows the City to set the amount of assignment pay and the conditions under

which it is payable by ordinance, the City's ordinances cannot override the statutory scheme established by the Legislature. *See* TEX. CONST., Art. XI, § 5 (cities with more than five thousand inhabitants may adopt and amend their own charters, but "no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *City of Santa Fe v. Young,* 949 S.W.2d 559, 560 (Tex.App.-Houston [14th Dist.] 1997, no writ) ("[A]n ordinance of a home-rule city that conflicts with a state statute is unenforceable to the extent of such conflict.") (citing *Dallas Merch.'s and Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 491 (Tex.1993); *City of Richardson v. Responsible Dog Owners of Tex.,* 794 S.W.2d 17, 19 (Tex.1990)); *Gordon v. State,* 757 S.W.2d 496, 502 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) ("An ordinance that is inconsistent with state legislation is impermissible.") (citing *City of Brookside Vill. v. Comeau,* 633 S.W.2d 790, 796 (Tex.1982)).

Section 143.115 of the Local Government Code specifically addresses payment for accumulated vacation leave. TEX. LOCAL GOV'T CODE § 143.115 ("Payment of Accumulated Vacation Leave in Populous Municipality"). This section states that a fire fighter "who leaves the classified service for any reason is entitled to receive in a lump-sum payment the *full amount of the person's salary* for the period of the person's accumulated vacation leave." *Id.* (emphasis added). Section 143.116 ad-

dresses payment for accumulated sick leave. *Id.* at 143.116 ("Payment of Sick Leave on Termination of Service"). It provides that a fire fighter is entitled "to receive in a lump-sum payment the *full amount* of the ... accumulated sick leave." *Id.* § 143.116(a) (emphasis added). Sick leave accumulated before September 1, 1985 is valued at the fire fighter's *salary* on August 31, 1985. *Id.* § 143.116(b). Sick leave accumulated after September 1, 1985 is valued at the fire fighter's average *salary* in the fiscal year in which the sick leave was accumulated. *Id.* Thus, the City must pay the fire fighters based upon their *salary,* a word that is statutorily defined.

Section 143.110 of the Local Government Code, entitled "Salary," lists the components of a fire fighter's salary. *Id.* § 143.110. This section states that, in addition to base salary, a fire fighter is entitled to longevity pay, seniority pay, educational incentive pay, assignment pay, and shift differential pay, if applicable.[15] *Id.* § 143.110(b). The City's own contrary ordinances do not prevail over the provisions of the Local Government Code. *See* TEX. CONST., Art. XI, § 5; *Young,* 949 S.W.2d at 560 (citing *Dallas Merch.'s and Concessionaire's Ass'n,* 852 S.W.2d at 491; *Responsible Dog Owners of Tex.,* 794 S.W.2d at 19); *Gordon,* 757 S.W.2d at 502 (citing *Comeau,* 633 S.W.2d at 796). Thus, under the plain language of this statute, we conclude that the City must pay a fire fighter his full salary for unused vacation and sick leave, including educational incentive pay and assignment pay.[16]

---

**15.** The City admitted, in response to the fire fighters' request for admissions, that a fire fighter's salary includes base pay, and if applicable, longevity pay, assignment pay, and educational incentive pay.

**16.** This conclusion—that the City must pay fire fighters their full salary for unused vacation or leave time—is consistent with the San

Antonio Court of Appeals' and the Attorney General's interpretation of section 143.045 of the Local Government Code. *See Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 82 (Tex.1997) (opinions from the Attorney General are persuasive but not binding authority). Both concluded that fire fighters were entitled to be paid the same amount they

## B. Texas Local Government Code

 Finally, the City argues that, under the provisions of the Local Government Code and the City's Ordinance No. 97–1575, the fire fighters cannot receive premium pay unless they have actually performed the duties of that assignment. At its heart, the City's argument is that the fire fighters can never receive assignment pay unless they were actually at work performing the "specialized functions" for which assignment pay is authorized.[17] We reject this contention for the reasons that follow.

First, there is no statutory requirement that the fire fighter actually perform the specialized function during any particular shift to qualify for assignment pay. Second, the statutory provisions governing termination payouts for unused vacation and sick leave specify that a fire fighter will be paid based upon the "full amount" of his or her salary. And the word "salary," statutorily defined to include the components of assignment pay and educational incentive pay, is not limited to base pay and longevity pay. Had the Legislature intended for the fire fighters to be compensated only at the rate of their base pay and longevity pay, the Legislature could easily have stated that the fire fighters were entitled to only these certain types of pay. Because the Legislature did not, we conclude the City's method of calculating the fire fighters' termination payouts is not authorized on this basis either.

We conclude the trial court did not err in granting partial judgment in the fire fighters' favor on their Termination Pay claim, and we overrule the City's fourth issue.

## VI. Conclusion

Having overruled each of the City's issues on appeal, we affirm the trial court's partial summary judgment.

---

would have been paid had they actually used the vacation or sick leave time. *See* Op. Tex. Att'y Gen. No. LO–90–72 (1990) ("termination lump-sum payment must be equivalent to the pay the individual would have received 'if the person had taken the sick leave.' "); *City of San Antonio v. Baer,* 100 S.W.3d 249, 253 (Tex.App.-San Antonio 2001, no pet.) (fire fighters were entitled to the full amount of salary they would have received had they taken the approved leave days). The City does not contest that the fire fighters would have received premium pay in addition to their base and longevity pay if they had actually used the sick leave or vacation time. Section 143.045 differs from the sections discussed above because of its broader application; the sections discussed above, 143.115 and 143.116, pertain only to municipalities with more than 1.5 million inhabitants, while section 143.045 is not limited in that fashion. This discrepancy is a distinction without a difference. The statutory language in the sections is functionally identical. *See* TEX. LOCAL GOV'T CODE § 143.045(c) (a fire fighter is entitled to receive a lump-sum termination payment in "the full amount of the person's salary"); § 143.115 (a fire fighter is entitled to "the full amount of the person's salary" for accumulated vacation leave); § 145.116 (a fire fighter is entitled to the "full amount of the [fire fighter's] accumulated sick leave").

17. *See* TEX. LOCAL GOV'T CODE § 143.113(b) (municipality may authorize assignment pay for fire fighters who perform specialized functions); CITY OF HOUSTON ORDINANCE No. 97–1575, § 5 (permitting assignment pay for one who serves in a paramedic capacity); § 6 (permitting emergency medical technician assignment pay for one who is assigned to an emergency medical ambulance unit); § 7 (permitting assignment pay for one who is assigned to the field training program and is actually performing the duties and responsibilities of that program); § 8 (permitting assignment pay to one who is assigned to, and actually does, perform the duties of a District Training Officer); § 9 (permitting Paramedic Preceptor assignment pay only while the person is designated by the Fire Chief and while an intern is assigned); § 10 (permitting assignment pay for one who is assigned to the Hazardous Duty Response Team or who participates in the stabilization of hazardous materials in an emergency).

**EXHIBIT A**

**LIST OF APPELLEES**

Steve Williams
Thomas G. Arfele
Lloyd A. Irvin
Richard C. Mumey
Joseph M. Tortorice
Leo Adams
Travis E. Adams
Leslie C. Adkins
George P. Alexander
Kevin J. Alexander
Jerry W. Anderson
Leslie F. Anderson
Lanny W. Armstrong
James T. Atkinson
Myron E. Atkinson
Charles D. Barr
Johnny E. Belin
Hillary Bell
Thomas E. Belyeu
Robert L. Bennett
Paul N. Bernard
Craig E. Boegler
Ronnie L. Boegler
Joseph T. Bond
Raymond Borden
Gary L. Bourgeois
Gary L. Brown
Sidney R. Bruce
Ray Burt
Arthur Butler
John G. Butler
Dennis C. Byrd
Manuel G. Caballero
Lonny R. Cameron
John Cannon
Chester A. Cary
Daniel W. Casanover
Charles B. Cason
Ezdore P. Cegielski
Dennis Celsor

Leonard L. Cherry
Clifford D. Chevalier
Samuel R. Chumley
Donald R. Clark
John A. Clemens
Howard N. Coates
Robert L. Cobb
James C. Collins
Travis A. Combs
Richard C. Cook
Daniel Cordaway
Robert A. Cortez
Willie E. Cotten
Dennis Cox
James R. Crowder
Stanley G. Curtis
William B. Dalzell
Larry C. Danna
Ronnie H. Dees
Sam L. DeForke Jr.
Charles F. Demoss
Ronald E. Dornak
Norman E. Driskell
Ernest Duran
Ronald Earnest
David A. Easley
Billy W. Emmons
Bobby C. Englishbee
Daniel E. Estes
Allen L. Farris
John L. Filar
Jarvis D. Fisher
Lynn E. Fortune
Michael R. Gann
Ralph M. Garza
Richard L. Garza
Brad T. Gibson
Willie E. Glass Jr.
Johnny D. Glover
Frank E. Gore

Frank Guthrie
Newel K. Hamilton
Everett H. Harkless
David L. Harper
Leon J. Hauck
Charles E. Hawthorne
Donald W. Helm
James E. Hilsher
James H. Hobbs
James W. Holden
John M. Holleman Jr.
Lindsey G. Holt
Richard A. Horowitz
Robert J. Huizar
Casey R. Jacoby
William P. Jansa
Oscar S. Jenkins
James B. Jernigan
Billy W. Johnson
Franklin E. Kelner
Joseph Kirvin
James P. Kivel
Louis E. Klare
Alton D. Lee
Calvin L. Lee
Ralph J. Lemon
William M. Lindsey
Marvin Litzler
William Lobins
Richard Locke
Phillip A. Long
Francis X. Maher
Lawrence M. Malck
John J. Maniscalco
George A. Manos
Richard Massey
Stanley McCoy
Jackie R. McDonald Jr.
Richard A. McTague
Gary W. Miller

Billy S. Chaffin
Frederick V. Moore
Tranquilino C. Munoz
Sammy J. Musachia
Gary W. Nelius
Terry Oberpriller
Donald C. Paradowski
James L. Pavlock
Marcos O. Perez
Charles Phlegm
Eugene W. Pilkington
Johnnie S. Posuk
Christopher Potier
Jerry W. Powers
Harold J. Prevost
Harry C. Pruitt
Robert E. Putnam
Rocco R. Rao
Edmond B. Reeves
David Reyes
Jose L. Reyes
James B. Riggs Jr.
George A. Ross
Anthony Russo
Daniel Salazar
William E. Sammons
Leon Sandles
Travis J. Sattiewhite
William L. Scates
Sammy L. Schillaci, Deceased
Phillip S. Schultz
Anthony G. Schulze
George C. Seaback
Terry Shaffer
Robert C. Sherrard
Billy H. Sheffield
Roy L. Simmons
Allen D. Stagner
Herbert W. Stein
Leonard Stephens
Robert W. Steward
Wilbert P. Steward
David Stewart
Lloyd W. Stone

Zenus A. Graham
John S. Taylor
James L. Tharp
Amar P. Thibodeaux
Billy W. Thompson
Duron J. Thorne
Ronnie L. Tidwell
David A. Tilbury
James H. Tucker
Lester W. Tyra
Willie G. Vick
Gilbert Villareal
Jerry D. Wakefield
Oscar F. Wallace Jr.
Michael F. Wead
Marion Weaver
Jack E. Wedgeworth
Larry A. Wesley
Charles V. Wheeler
Charles J. Whitcher
Daniel Whiting Jr.
James M. Williams
Charlie S. Wilson Jr.
John P. Wood
Robert Wroblewski
Antoine E. Yazbeck
Carl B. Young
Jimmy Bundrick
Daniel J. Dillard Sr.
Wayne C. Grissom
Gene Guentert
Wendell Keilers
William Henry King
Jerry McDaniel
Jerry D. Smith
Paul Albarado
Benny H. Albers
Alex J. Arizpe
Ulysess Armstrong
Chapman E. Baber
Ronnie Bates
Royce G. Beck
Phillip Bernard
David Bonds

Jesus L. Minjares
William N. Brown
William R. Campbell
John L. Carter
John M. Christopher
Gary T. Dean
Jimmie Dearing
Gus Leon Fress
Thomas Gainous
David N. Gilchrist
Donna Golden
Gordon L. Griffin
Victor Gustafson
Samuel Hamilton
Paul D. Hayes, Deceased
Michael J. Herman
Manuel M. Herrera
Aubrey Houston
Larry Hunter
Charles A. Ingram
Mearl L. Jones
John Kling
Jerry D. Lee
Travis D. Lee
Darrell Mahalec
Daniel E. Malek
Raul Martinez
Michael C. McFarland
Royce Melton
James G. Miller
Romeo Montalvo
Louis S. Moore
Roy E. Moore
Wayne Murphy
Carl N. Newman
David L. Norris
Gary Pick
Robert W. Prescott
Larry Prevatte
Eddy Proske
Walter B. Kirk
Leon D. Lehmann
Eddie Lowery

Bruce Talbot
Reginald Tarver
Darrell R. Shely
William L. Sivley
Dannie C. Smith
Lance Stahl
Jerry Stansel
Melvin L. Starling
William R. Stone
Anthony J. Tamborello
Rex A. Ticknor
Edward K. Ward
Douglas R. Weidemann
Frederick J. Wessman
William Kirk Williams
James A. Wright
Zeke Zimmerman
James Allen
Norman E. Allen
Curtis H. Barker
Gary P. Bennett
Raymond R. Bennett
Terry L. Bolton
Ben H. Brymer
Bobby D. Carraway
Joseph A. Clark
John T. Crocker
Gary. L. Davison
Norman Donalson
Ralph E. Frazier
Gregory A. Galan
James E. Goetzman
Gary Grimes
Loyd R. Hunter
Rodney D. Johnson

Kenneth A. Broeder
Billy Bromonsky
Williams H. Skinner
William D. Smelley
Thomas Spencer
Bob C. Strahan
Richard F. Thomas
Jerry W. Thompson
Terry G. Thompson
John M. Tumis
Larry W. Wade
Wesley Waldrum
Jerry E. Walker
Roger W. Walker
Dale G. Watson
Bobby J. Weatherly
James E. Wilkerson
Michael Craig Williams
Richard Williams
Aurora Carrasco-Ybarra
Oscar E. Sacher
Harvard E. Schroeder
Earl D. Manning
Kenneth R. Martin
Christopher E. Mellen
Calvin Mendel
Steven L. Merrel
David Mills
Donald R. Myers
Larry L. Rooney
Jerry L. Sanders
Anthony S. Reynolds
Carlos E. Robledo
Billy G. Royal
Louis L. Rumfolo